LOUISVILLE, NEW ORLEANS & TEXAS RAILWAY COMPANY *v.*
ISAIAH DOUGLASS.

1. MASTER AND SERVANT.   *Tort of servant.   Master's liability.*

To impose liability on the master for the wrongful act of a servant, the
servant must at the time be engaged about the master's business.

2. SAME.   *Railroads.   Act of baggage-master.   Damages.   Case.*

A colored boy boarded defendant's passenger-train, and, for some cause,
got into the compartment used by the express company. The express-
messenger called to defendant's baggage-master to come in, that they
might have some fun at the expense of the boy. The baggage-master left
his own compartment and complied. Being frightened by the language
and conduct of the two men, the boy jumped from the running train, re-
ceiving fatal injuries. *Held,* that the defendant was not liable for the
acts of the baggage-master, unless he was about its business when he
quit his compartment and went into the ∙other, and participated in the
conduct which caused the injury.

3. SAME.   *Act of express-messenger.   Railroad company not liable.*

In such case, it appearing that the express-messenger was not the agent of
defendant, it is not liable for his conduct.

FROM the circuit court of Tunica county.
HON. R. W. WILLIAMSON, Judge.

The appellee, Isaiah Douglass, was living in Tunica county,
about twenty miles north of Tunica station, on the line of the
Louisville, New Orleans & Texas Railway. His son, Charles
Douglass, about sixteen years of age, had left home in 1890,
and had gone to Tunica. In October of that year, intending
to return home, as the testimony tends to show, he boarded
appellant's north-bound passenger-train at Tunica, and,
through ignorance, or for some reason unexplained by the
testimony, he went into the express department. This was
in a car divided into three compartments—the north end
being used by the Southern Express Company, the middle

compartment for the United States mails and the south end being used by the railway company to carry the baggage of passengers. There were doors leading from one compartment to another. The boy got in the express compartment just as the train was leaving the station. On discovering his presence, the express-messenger called to the baggage-master, who was in his own compartment, saying: "Come here! I have a damn coon in here, and we will have some fun." The baggage-master immediately went in, and there, seeing the boy, he spoke to him in a threatening manner, as the testimony of plaintiff tended to show, and asked, "What in the hell are you doing in here?" The boy made no reply. The express-messenger began looking around as if hunting for something to strike the boy with. Plaintiff's testimony further tended to show that the baggage-master said, "We are going to give you hell," and that the boy appeared to be greatly frightened by the action and language of the two men, and, as their backs were turned, jumped from the car, the train then running at a high rate of speed. In the fall he received injuries from which he died in a short time. In his pocket was found one dollar, which was more than sufficient to pay his fare to the station at which his father lived. On his person was also found a small pistol.

The baggage-master, as a witness for defendant, denied that he made use of the language attributed to him by the colored postal-clerk, witness for plaintiff. He testified that his purpose in going into the express-car was to take the boy to the conductor; that he had no authority to put any one off the train; that his duties were confined to the handling of baggage, and that he merely reported parties to the conductor whom he found riding in the baggage or express-car. The conductor had not seen the boy, and knew nothing of the occurrence until it was reported to him by the baggage-master. The rules of the company in regard to the ejection of parties from trains were introduced, showing that the duty of ejecting persons from the train devolved upon the con-

ductor and brakemen, or other parties acting under the order of the conductor. It was admitted that the boy had no ticket. It was shown that he was fully acquainted with the running of trains, and lived near the railroad.

The testimony tended to show that the plaintiff expended about $25 in burial expenses, and that the services of the boy until becoming of age were reasonably worth $12.50 per month.

On the trial, at the instance of plaintiff, the court gave the jury the following instructions:

" 6. That if they find from the evidence that plaintiff's son was a minor, and that, in October, 1890, said minor boarded the train of defendant at Tunica, Miss., for the purpose of being carried to Lake Cormorant, Miss.; and that, in boarding said train, got into the express department of the car belonging to defendant's train; and that, when he got into the said department of said car, the express-messenger called to the baggage-man of the train to come in there, that he had a 'coon' in there, and they would have some fun, and the baggage-man went to the express department of the car; and then he and the express-messenger wantonly, wilfully and recklessly, by their actions and their language, induced said minor to believe and fear that they were going to inflict upon said minor severe corporal punishment, or do him bodily harm and injury; and that, by reason of such fear, and to escape said punishment or injury at the hands of said express-messenger and baggage-man, said minor leaped from the car while it was running at a great speed, and sustained injuries from which he shortly died, then the jury will return a verdict in favor of plaintiff, giving him such damages as they may see meet and proper to give, according to the instructions heretofore given by the court in this case as to said damages.

" 7. If the jury believe from the evidence the facts in this case to be as set out in the foregoing instruction, then they are instructed to find for the plaintiff, and assess his damages

above indicated, even should they further believe, from the evidence, that said minor was a trespasser on said train at the time he leaped therefrom, and had no lawful right thereon.

"8. The court further instructs the jury that, if they find, from the evidence, the facts in this case to be as above set out, then they will return a verdict for the plaintiff, and assess his damages as above indicated, even though they believe further, from the evidence, that the express-messenger was the prime mover and instigator of the action and language which put said minor in such fear as to cause him to leap from said train."

The court refused to give the following instructions, asked at the instance of defendant:

"1. The court instructs the jury to find for the defendant.

"2. The court instructs the jury that the proof shows that the express-messenger was not the servant of the defendant, and the defendant is not liable for this acts. Therefore, if the boy, Charles Douglass, was impelled to jump from the car of the defendant by reason of the language or demonstration of the express-messenger, and not by the act or demonstration of an agent of defendant, the defendant is not liable, and they will find for the defendant.

"4. The court instructs the jury that it appears from the evidence that the baggage-master of defendant had no authority beyond that of safely transferring the baggage, mail, etc., committed to his care; and if he was engaged, in company with the express-messenger, in threatening and terrifying the boy, Charles Douglass, for their own amusement, and not in the performance of any duty to the defendant, then he is liable for the reasonable consequences of his act, but the defendant is not liable, and they will find for the defendant."

Verdict and judgment in favor of plaintiff for $496. Motion for new trial overruled. Defendant appeals.

In the court below the defendant introduced the record of a divorce suit, to show that the father and mother of the boy had been divorced, and that the custody of the boy was

awarded to the mother, and hence it was claimed that the father had no right to sue for his services. There was evidence to show that the mother had married again, and had turned over the custody of the boy to his father; but, as the court in its opinion takes no notice of the point, it is not deemed necessary to give any of the evidence as to this, or to make any further statement of the case.

*Mayes & Harris*, for appellant.

The deceased was a trespasser. He had no ticket, and was in a place where he had no right to be, even if a passenger. He did not offer to pay his fare, and refused to explain his presence in the express-car. However deplorable the occurrence which resulted in his death, the question is, in what way is the railway company to blame? What agency put in operation by it is responsible for the result? What unlawful exercise of authority conferred by the company in regard to him is shown? He was not rightfully in the express-car, and the railway company has not failed to perform any duty which it owed him. The company is not liable to a trespasser for the acts of its servants, except in the exercise of authority delegated to them. Patterson's Ry. Ac. L., 189, 190.

The authorities upon which the court below seems to have acted in giving the plaintiff's instructions are not applicable. One was a case in which a brakeman, having authority to eject parties, forcibly ejected a trespasser from a moving train. In the other case a passenger was assaulted by the porter of a sleeping-car. The railway company was held liable on the doctrine which requires it to carry passengers safely, and to protect them.

*Railroad Co.* v. *Phillips*, 64 Miss., 693, has no application. In that case, the boy, in getting off, fell under the cars and was run over. The court held that § 1059, code 1880, applied, because he was injured by the "running" of the cars. Here, the gravamen of the plaintiff is the conduct of the parties which induced the action of the deceased, resulting

in his injury.   The baggage-master had no authority to eject persons from the train, and the defendant is not liable.    48 Miss, 112; 8 Eng. & Am. R. R. Cas., 177, 355, 545; 34 *Ib.,* 277, 281; 63 Miss., 577.

There is nothing in this case which warrants the application of the admitted harsh rule which makes the principal responsible for the wilful and malicious torts of the agent.

*James R. Chalmers* and *St. John Waddell,* for appellee.

The facts of this case are very similar to those in *Railroad Co.* v. *Phillips,* 64 Miss., 693.   The only difference is, that in the Phillips case the boy had no right on the train, whereas, in this case deceased was rightfully on the train, having gone on it for the purpose of being transported to his home.   This is, therefore, the stronger case.   The only point as to which we think appellants can plausibly contend is as to the question of contributory negligence on the part of deceased, in jumping from the train.   This was a question to be decided by the jury, and it has been settled in favor of appellee.   See *Gamblin* v. *State,* 45 Miss., 658; *Skinner* v. *State,* 53 *Ib.,* 399; *Bower* v. *Henshaw,* 56 *Ib.,* 619.

Where a person is, by the act of the servants of a railroad company, placed in apparent peril, and, being obliged to act quickly, places himself in greater peril, he is not guilty of contributory negligence.   12 Am. & Eng. R. R. Cas., 86; 80 N. Y., 212; *Freer* v. *Cameron,* 55 Am. Dec., 674; 37 Cal., 400; 8 At. Rep., 212; Redfield on Railways, 106; 2 Thomp. on Neg., p. 1092.

Payment of fare is not necessary to constitute one a passenger.   6 So. Rep., 565.   A railroad company is responsible for the acts of the employes of the Pullman Car Company. 4 So. Rep., 85; *Railroad Co.* v. *Handy,* 63 Miss., 609; 43 Am. Dec., 102, 433; 32 Am. Rep., 328.

As to liability of a railroad company for acts of train-men in expelling passengers, see 38 N. W. Rep., 763; 39 *Ib.,* 635.

A carrier must not only protect passengers against the acts

of strangers, but against the violence of its own servants. *Railroad Co.* v. *Burke*, 53 Miss., 200; 8 Am. & Eng. R. R. Cas., 355.

The company is liable to a person, whether passenger or trespasser, who in a state of panic jumps from a train in motion and is injured, where such panic was caused by an employe of the company. 34 Am. & Eng. R. R. Cas., 277, 281.

The instructions in this case clearly cover all the questions of law applicable to the facts, and the finding of the jury is amply warranted by the testimony.

CAMPBELL, C. J., delivered the opinion of the court.

The instructions given for the plaintiff are erroneous for want of the qualification that the baggage-master must have been about his master's business in the matter complained of, in order to make the master liable for what he did. If he was not about his master's business, when he quit his own compartment of the car, and responded to the call of the express-messenger and went into another compartment, the master cannot be made responsible for his wrongful conduct. If he went forward about the business of his employer, and to perform any duty with respect to the boy, and, while at that, was guilty of wrongful conduct, the company is liable for it.

The second and fourth instructions asked by the defendant should have been given. The express-messenger was shown not to be the servant of the company, and it is not liable for his acts; and the servant who is not engaged about his master's business cannot impose liability on him.

*Reversed, and remanded for a new trial.*